FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAURIE LEROY L., | No. 2:18-CV-00059-SMJ |
| Plaintiff, | **ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court, without oral argument,[1] are the parties' cross-motions for summary judgment, ECF Nos. 17 & 19. Plaintiff, proceeding *pro se*, appeals the Administrative Law Judge's ("ALJ") denial of benefits. ECF No. 1. Plaintiff's main contention is that the ALJ erred by rejecting his treating physician's opinion, which diagnosed Plaintiff with fibromyalgia and determined he has a severely restricted residual functional capacity due to fibromyalgia. The Commissioner of the Social Security Administration ("SSA") asks the Court to affirm the ALJ's decision.

---

[1] Plaintiff requests oral argument. ECF No. 20 at 1; ECF No. 27 at 1. Even when a party requests oral argument, the Court may exercise its discretion to "decide that oral argument is not warranted and proceed to determine any motion without oral argument." LCivR 7(i)(3)(B)(iii). Here, the Court exercises such discretion and denies Plaintiff's request.

After reviewing the record and relevant legal authorities, the Court is fully informed. For the reasons set forth below, the Court reverses the ALJ's decision and therefore grants Plaintiff's motion and denies the Commissioner's motion.

## I.     BACKGROUND[2]

On June 30, 2014, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning December 31, 2009. AR[3] 267, 274. The SSA denied the claims initially and upon reconsideration, and Plaintiff requested a hearing. AR 19. ALJ R.J. Payne presided over a hearing in Spokane, Washington on September 1, 2016. AR 19, 49. The ALJ issued a decision unfavorable to Plaintiff. AR 16–32. The SSA Appeals Council denied Plaintiff's request for review. AR 1.

## II.     ALJ FINDINGS[4]

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 12, 2012. AR 22. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, mild arthritis bilateral shoulders, chronic fatigue syndrome, chronic myofascial pain, hepatitis C by

---

[2] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

[3] For ease and consistency with the briefing, the Court cites to the consecutive pagination of the administrative record, which appears at ECF No. 12.

[4] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 20–21, and the parties do not dispute that standard. Accordingly, the Court does not restate the five-step process in this Order.

history, and obesity. AR 22. At step three, the ALJ found Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. AR 26. At step four, the ALJ found Plaintiff has the residual functional capacity to perform light work with certain limitations. AR 27. Further, at step four, the ALJ found Plaintiff is unable to perform any past relevant work. AR 30. Finally, at step five, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and residual functional capacity. AR 30. Accordingly, the ALJ determined Plaintiff is not disabled as defined in the Social Security Act. AR 31.

## III.  STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11. Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from

the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Yet, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

## IV.   ANALYSIS

**A.   The ALJ committed legal error and failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Plaintiff's treating physician.**

Plaintiff argues the ALJ erred by rejecting the opinion of his treating physician, Ethan M. Angell, MD, in favor of an opinion from a non-examining physician, Minh D. Vu, MD. ECF No. 17 at 2; ECF No. 18 at 3. The Court begins its analysis by reviewing the applicable law, then turns to the facts.

### 1.   Evaluation of medical source opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do

not treat the claimant." *Id.* (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.*

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo*, 871 F.3d at 675 (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors [set forth in 20 C.F.R. § 404.1527(c)(2)–(6)]." *Id.* Relevant factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability by medical evidence and the quality of explanation provided, and consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2)–(4); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Additional factors include the amount of understanding of the SSA's disability programs and their evidentiary requirements, and the extent of familiarity with other information in the claimant's case record. 20 C.F.R. § 404.1527(c)(6); *Orn*, 495 F.3d at 631.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an

ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (alteration in original) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198). "However, the opinions of nonexamining doctors 'cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017) (alteration in original) (quoting *Lester*, 81 F.3d at 831). Still, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

## 2. Fibromyalgia and residual functional capacity: Social Security Ruling 12-2p

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" *Revels*, 874 F.3d at 656 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that

can exacerbate the cycle of pain and fatigue.'" *Id.* (quoting *Benecke*, 379 F.3d at 590). "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." *Id.* (internal quotation marks and alteration omitted). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (internal quotation marks omitted). "Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* (internal quotation marks and alteration omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Id.* (quoting *Benecke*, 379 F.3d at 590). "[T]here are no laboratory tests to confirm the diagnosis." *Id.* (alteration in original) (quoting *Benecke*, 379 F.3d at 590).

While fibromyalgia was once poorly understood, "[a] sea-change occurred in 2012, when the SSA issued a ruling recognizing fibromyalgia as a valid 'basis for a finding of disability'"—Social Security Ruling ("SSR") 12-2p. *Id.* (quoting SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012)). The ruling "provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria." *Id.* Here, Dr. Angell applied the 2010 criteria only. AR 447–48. Under those criteria,

> a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in

intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Revels*, 874 F.3d at 657 (quoting SSR 12-2p).

SSR 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" *Id.* at 657 (quoting SSR 12-2p). For this reason, the ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'" *Id.* (quoting SSR 12-2p). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke*[, 379 F.3d 587]. The failure to do so is error . . . ." *Id.* at 662.

### 3. The ALJ's error in rejecting Dr. Angell's opinion

Dr. Angell diagnosed Plaintiff with fibromyalgia and determined he has a severely restricted residual functional capacity due to fibromyalgia. AR 467–70, 473–76. The ALJ rejected Dr. Angell's opinion by finding, at step two, that Plaintiff does not have a medically determinable impairment of fibromyalgia, and by finding, at step four, that he has the residual functional capacity to perform light work. AR 22–30. The Court considers each step in turn.

### a.    The ALJ's error at step two

The ALJ rejected Dr. Angell's diagnosis of fibromyalgia, finding it is not a medically determinable impairment because it "was not established pursuant to the criteria in SSR 12-2p." AR 23; *see* AR 24–25. While the ALJ recited SSR 12-2p's two sets of criteria for diagnosing fibromyalgia, he failed to apply them. AR 25. Instead, the ALJ jumped to the conclusion that Dr. Angell's physical examinations "are minimal and do not contain the criteria listed above." AR 25. Substantial evidence does not support this sweeping finding. On the contrary, the record overwhelmingly refutes this finding, such that no reasonable person could accept the premise.

The first criterion for diagnosing fibromyalgia is "widespread pain that has lasted at least three months (although the pain may 'fluctuate in intensity and may not always be present')." *Revels*, 874 F.3d at 657 (quoting SSR 12-2p). The ALJ did not dispute that Plaintiff satisfies this criterion. Dr. Angell opined Plaintiff "clearly meet[s] diagnostic criteria for fibromyalgia" after having symptoms falling under a fibromyalgia-related diagnostic code "over the past 2+ years." AR 448. Dr. Angell noted Plaintiff's "[s]ignificant widespread pain and fatigue for at least 3 months are the cardinal features of fibromyalgia." AR 448. The ALJ made no finding to the contrary and appeared to accept this aspect of Dr. Angell's opinion. AR 23, 25. Therefore, the record conclusively establishes the first

criterion for diagnosing fibromyalgia.

The second criterion for diagnosing fibromyalgia is "repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, 'especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.'" *Revels*, 874 F.3d at 657 (quoting SSR 12-2p). While the ALJ minimized or dismissed many indicators, he did not seriously dispute that Plaintiff satisfies this criterion. Nor could the ALJ do so. In addition to Dr. Angell's opinion above, the record establishes that Plaintiff had another "cardinal feature[] of fibromyalgia"—"many other symptoms" beyond widespread pain. AR 448. The record is replete with Plaintiff's manifestations of those symptoms, including:

(1)  Fatigue. AR 317–18, 403, 410–11, 418, 426, 432–36, 438–39, 441–42, 444, 447–48, 450, 452, 472, 484, 486–87, 490, 493–94, 496, 504, 506, 509, 511, 515, 519. This fatigue is considered chronic and had its onset around January 31, 2013. AR 484, 486–87, 493, 496, 504, 509, 515, 519. This fatigue is described as:
    (a)  Chronic fatigue. AR 317–18, 435, 437, 443, 472, 478, 480, 506, 516, 534.
    (b)  Severe fatigue. AR 438.
    (c)  Chronic severe fatigue. AR 467, 473.
    (d)  Very severe fatigue. AR 472.
    (e)  Ongoing profound fatigue. AR 494.
    (f)  Extreme fatigue. AR 509.
    (g)  And disabling fatigue. AR 450, 504.
(2)  Waking unrefreshed. Sleeping many hours but "never fe[eling] like [he] got any sleep." AR 317. "Some days he sleeps excessively, and he does describe generally not sleeping deeply, and typically not waking up in the morning refreshed." AR 514. "[C]hronically feeling sleepy." AR 494. "Feel[ing] tired, not sleeping well." AR 436. And

"feel[ing] 'absolutely wiped out' most of the time. At his best, . . . still feel[ing] like [he] barely can get out of bed on most days." AR 514.

(3) Memory problems that worsen with fatigue. AR 317, 403.

(4) Depression and down mood due to pain. AR 406–07, 413, 435–36, 452, 467, 473, 482, 491, 494, 506, 511, 515.

(5) Malaise. AR 410–11, 442, 452, 506. Distress ranging from mild to moderate to extreme. AR 397, 429, 433, 435, 452, 506, 511. And anxiousness or irritability. AR 421, 428–29, 435, 437, 515.

(6) Headaches. AR 317, 428, 438, 448.

(7) Nausea. AR 403, 419, 494, 515. Also, "[c]hronic constipation with overflow incontinence." AR 441, 443–44, 447, 450, 504, 509, 515, 519; *see* AR 442, 484, 486–87, 489–90, 493.

(8) Finally, "chronic sore throat and compared voice," and "other 'flu-like' symptoms." AR 449; *see* AR 430, 447, 482.

Plaintiff "has complained of these symptoms for years." AR 318. But the ALJ simply failed to account for them while analyzing the second criterion for diagnosing fibromyalgia. *See* AR 22–26.

What little analysis the ALJ performed on this criterion reveals a fundamental misunderstanding of both fibromyalgia and SSR 12-2p. First, the ALJ cherry-picked examples of office visits that, in his view, showed "physical findings [we]re relatively benign." AR 28. But SSR 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" *Revels*, 874 F.3d at 657 (quoting SSR 12-2p). Thus, the ALJ was required to consider the entire longitudinal record. *See id.*

Second, and perhaps more importantly, the ALJ highlighted features he felt undermined a fibromyalgia diagnosis when case law says the opposite.

Specifically, the ALJ emphasized that the record showed slow ambulation with a stable gait and no limp, AR 23, 25, 28, an unremarkable musculoskeletal system with no significant decreased range of motion or joint pain, AR 25, 28, and normal muscle strength, sensory functions, and reflexes, AR 28. But as the Ninth Circuit recently explained, what makes fibromyalgia unusual is that these features are consistent with the disease. *See Revels*, 874 F.3d at 656. The ALJ committed legal error in finding otherwise. Considering the entire longitudinal record, the evidence conclusively establishes the second criterion for diagnosing fibromyalgia.

The third criterion for diagnosing fibromyalgia is "evidence that other disorders are not accounting for the pain." *Id.* at 657. This criterion appears to be the primary basis for the ALJ's decision that Plaintiff does not have a medically determinable impairment of fibromyalgia under SSR 12-2p. But the ALJ's decision on this criterion was legally erroneous. A claimant need only present some evidence that other possible conditions were excluded. SSR 12-2p (providing the SSA may find a person has a medically determinable impairment of fibromyalgia "if he or she has [among other things] . . . [e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded"). While Plaintiff presented such evidence in the form of Dr. Angell's opinion, the ALJ discounted it without giving specific

and legitimate reasons, supported by substantial evidence, for doing so.

The ALJ placed great emphasis on one phrase in Dr. Angell's May 13, 2015 letter: "no evidence of an underlying treatable etiology." AR 472; *see* AR 25. The ALJ took this phrase out of context. *See* AR 25. In context, Dr. Angell says Plaintiff's "clinical picture meets diagnostic criteria for both chronic fatigue syndrome AND fibromyalgia" in part because Plaintiff "has undergone extensive lab evaluation and there has been no evidence of an underlying treatable etiology for these severe symptoms." AR 472. Dr. Angell's July 1, 2014 office visit notes confirm this understanding by declaring Plaintiff "clearly meet[s] diagnostic criteria for fibromyalgia, especially given that there has been no other clear explanation for [his] chronic symptoms." AR 448. Dr. Angell ruled out hepatitis C because Plaintiff had already been cured of that condition. *See* AR 472. Dr. Angell noted Plaintiff "has never had clinical or lab evidence for an underlying inflammatory autoimmune condition." AR 534. Dr. Angell also noted Plaintiff tried many medications and "show[ed] some clear benefit from . . . Savella (the only one indicated specifically for fibromyalgia)." AR 447. Considering all, Dr. Angell's letter communicates that "other disorders are not accounting for the pain." *Revels*, 874 F.3d at 657.

But the ALJ adopted an irrational interpretation of Dr. Angell's letter. In his decision, the ALJ interpreted the phrase "no evidence of an underlying treatable

etiology" to mean other disorders are accounting for Plaintiff's pain but Dr.

Angell had not yet discovered them. The record contradicts that interpretation. At

the hearing, Dr. Vu testified as follows in response to the ALJ's questions:

> A . . . [Dr. Angell] said that there's no underlying treatment or etiology for the problem.
>
> Q It doesn't mean [Plaintiff] doesn't have [fibromyalgia or chronic fatigue syndrome].
>
> A It means that, you know, that [Dr. Angell] doesn't want to say that there is no diagnoses for the problem.
>
> Q No. He's diagnosing him. He just says they can't be treated. He said no evidence of underlying treatable etiology. He's saying there's nothing that can be treated but he doesn't say he doesn't have fibromyalgia or chronic fatigue syndrome.
>
> A Okay. Yes. So, but I mean, you know, I disagree with the fibromyalgia . . . .

AR 60–61.

Additionally, the ALJ noted "Dr. Angell rarely listed fibromyalgia as a

diagnosis, instead citing 'chronic myofascial pain.'" AR 25 (citation omitted). But

in fact, Dr. Angell used the label "chronic myofascial pain" just three times, AR

448, 507, 517, which is far less than his references to fibromyalgia, AR 419, 439,

441–44, 447–49, 472, 482, 484, 495, 534. Further, each time Dr. Angell used the

label "chronic myofascial pain," he logged it under diagnostic code 729.1. AR

448, 507, 517. As Dr. Angell explained, this diagnostic code "is linked to many

names (to include fibromyalgia, myalgia/myositis, myofascial pain syndrome,

etc.)." AR 448 (internal quotation mark omitted). Dr. Angell used this diagnostic code to describe Plaintiff's symptoms for several years. *See* AR 447–48. Indeed, this diagnostic code appears in the record twelve times with various labels attached to it, including fibromyalgia. AR 438, 441–42, 444, 445, 447–48, 507, 517. At least one portion of the record suggests these various labels may be a matter of semantics. *See* AR 495 (discussing treatment of "myofascial pain syndromes, such as Fibromyalgia"). The record as a whole shows Dr. Angell refined his diagnosis over time and eventually decided on fibromyalgia. *See, e.g.*, AR 482, 484 (diagnosing "[p]rimary fibromyalgia syndrome" on May 26, 2016).

Still, the ALJ rejected Dr. Angell's opinion in favor of Dr. Vu's opinion. AR 22–26. Dr. Vu testified he did not think Dr. Angell's fibromyalgia diagnosis was sufficiently established because "rheumatoid arthritis" "can take care of the complaint."[5] AR 57; *see also* AR 61 ("I disagree with the fibromyalgia because mainly with the indication of the inflammatory joint problem . . . ."); AR 63 ("[Plaintiff] do[es] have indication of some degree of the inflammatory joint disease."). But Dr. Vu later contradicted himself, telling Plaintiff, "No, you don't[

---

[5] It is notable that Dr. Vu initially endorsed Dr. Angell's fibromyalgia diagnosis then pivoted midway through his direct examination. *See* AR 54–55 (testifying "[a]nd then there's the fibromyalgia" in response to an earlier question about what he found in the record); AR 56 ("And that fibromyalgia that makes great deals of pain. And his diagnosis is good."); AR 56–57 (testifying he is familiar with SSR 12-2p and thinks the fibromyalgia diagnosis "complies with that ruling" because "they expect the doctor to rule out other disease like the rheumatoid arthritis and lupus and et cetera, and they did that").

show signs of rheumatoid arthritis]. But you have, you may have something similar to arthritis, but I don't say that you have that either." AR 65.

Following this equivocation, even the ALJ discounted Dr. Vu's opinion regarding rheumatoid arthritis.[6] *See* AR 26 ("[W]hile Dr. Vu appeared to place undue emphasis on the possibility of an inflammatory arthritis, the undersigned has not considered that as a supported diagnosis . . . ."); *see also* AR 22 ("[Plaintiff] had been through extensive testing, but there was nothing that indicated an inflammatory process."); AR 24 ("[Plaintiff] went through testing to rule out other diseases and was found to have elevated rheumatoid arthritis markers at one point corresponding to inflammatory arthritis, but he does not carry that diagnosis."). The ALJ nonetheless extrapolated Dr. Vu's testimony broadly to find "there are objective explanations for the claimant's pain, but fibromyalgia [i]s not one of them." AR 24. And ultimately, the ALJ gave Dr. Angell's opinion "[n]o weight." AR 29.

The Court recognizes an apparent conflict between Dr. Angell's opinion and Dr. Vu's opinion. But the mere existence of a factual dispute is not enough, on its own, for an ALJ to completely discount a treating physician's opinion. *See Revels*, 874 F.3d at 664; *Trevizo*, 871 F.3d at 676. Initially, Dr. Vu's opinion must

---

[6] Here, fibromyalgia's predominance over an inflammatory arthritis makes sense because Plaintiff's pain is "diffuse" but "mostly non-joint related," AR 472, "widespread" but "typically not in joints," AR 514, and "'all over' body" but "not localized to any joints," AR 438.

constitute "other substantial evidence" that is inconsistent with Dr. Angell's opinion. *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)). However, Dr. Vu's opinion does not meet this standard for the reasons discussed above. "Even if the ALJ had pointed to substantial evidence supporting the decision not to give Dr. [Angell]'s opinion controlling weight, he failed to explain why Dr. [Angell]'s opinion deserved 'no weight' at all." *Revels*, 874 F.3d at 664. "When a treating provider's opinion is not entitled to 'controlling weight' because of substantial contradictory evidence, that opinion is still 'entitled to deference' based on factors [set forth in 20 C.F.R. § 404.1527(c)(2)–(6)]." *Id.* (quoting *Orn*, 495 F.3d at 632–33).

In *Trevizo*, the Ninth Circuit concluded an ALJ's "outright rejection" of a treating physician's opinion was "legally erroneous" because the ALJ "fail[ed] to apply the appropriate factors in determining the extent to which the opinion should be credited." *Id.* Though the ALJ suggested the treating physician's opinion was inconsistent with other substantial evidence in the claimant's case record, such that it should not be given controlling weight, the ALJ did not consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)–(6), "such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Id.* The Ninth Circuit noted "[t]his failure alone constitutes reversible legal error." *Id.*

This case is similar to *Trevizo*. Here, the ALJ failed to apply the appropriate factors in determining the extent to which Dr. Angell's opinion should be credited. The ALJ did not consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)–(6), namely the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability by medical evidence and the quality of explanation provided, consistency with the record as a whole, the amount of understanding of the SSA's disability programs and their evidentiary requirements, and the extent of familiarity with other information in the claimant's case record.

On the date of the hearing, Dr. Angell had been Plaintiff's primary care physician for five years. AR 472. The record shows Plaintiff visited Dr. Angell on at least twenty occasions. AR 409, 416, 418, 421, 424, 426, 428, 436, 438, 441, 444, 447, 450, 482, 485, 491, 494, 504, 509, 514, 519. In that time, Dr. Angell came to know Plaintiff "very well" and never found him to malinger. AR 534; *see* AR 467, 473. Dr. Angell directed treatment that helped Plaintiff achieve a successful cure of hepatitis C he contracted from a blood transfusion. AR 428, 472, 534. Plaintiff's "primary motivation for undergoing this treatment was to improve his diffuse pain and chronic fatigue." AR 472. "Unfortunately, neither [Plaintiff's] chronic diffuse (mostly non-joint related) pain nor his very severe fatigue improved with this cure." AR 472. So Dr. Angell kept working with

Plaintiff. *See* AR 472, 534. Dr. Angell "continue[d] to work on treating [Plaintiff's] symptoms with medications and lifestyle modification." AR 472. Dr. Angell noted Plaintiff tried many medications and "show[ed] some clear benefit from . . . Savella (the only one indicated specifically for fibromyalgia)." AR 447. However, both Dr. Angell and Plaintiff had the "understanding that it is unlikely that either his fatigue or pain issues will completely resolve." AR 472. Dr. Angell's opinion is supportable by the copious medical evidence set forth above. Dr. Angell provided a good quality explanation for his opinion, which is also set forth above. And Dr. Angell's opinion is consistent with the record as a whole, conflicting only with the testimony of non-examining physician Dr. Vu. Had the ALJ considered these factors, he would have been compelled to fully credit Dr. Angell's opinion.

In sum, the ALJ committed legal error and failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Angell's opinion at step two.

### b. The ALJ's error at step four

The ALJ gave "[n]o weight" to Dr. Angell's determination that Plaintiff has a severely restricted residual functional capacity due to fibromyalgia, reasoning "[t]hese extreme limitations listed by Dr. Angell are not supported by accompanying physical findings that would be expected to support this degree of

limitation." AR 29. Again, the ALJ's decision reveals a fundamental misunderstanding of fibromyalgia. The ALJ reemphasized that the record reveals no limp or loss of strength. AR 29–30. But as the Ninth Circuit recently explained, what makes fibromyalgia unusual is that these features are consistent with the disease. *See Revels*, 874 F.3d at 656. Additionally, the ALJ claimed "there is no mention of problems with the hands in any exam." AR 29. However, substantial evidence does not support this finding because the record plainly shows Plaintiff had diffuse pain and even numbness in his hands. AR 318, 406, 410.

In all other respects, the ALJ's rejection of Dr. Angell's opinion on residual functional capacity was erroneous for the same reasons as his rejection of Dr. Angell's fibromyalgia diagnosis. "Even if the ALJ had pointed to substantial evidence supporting the decision not to give Dr. [Angell]'s opinion controlling weight, he failed to explain why Dr. [Angell]'s opinion deserved 'no weight' at all." *Revels*, 874 F.3d at 664.

In sum, the ALJ committed legal error and failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Angell's opinion at step four.

**B.     The ALJ's error was harmful.**

To summarize, the ALJ erroneously rejected Dr. Angell's opinion, which diagnosed Plaintiff with fibromyalgia and determined he has a severely restricted

residual functional capacity due to fibromyalgia. Thus, the ALJ erred at step two by finding Plaintiff does not have a medically determinable impairment of fibromyalgia. But the ALJ also erred at step four by finding Plaintiff has the residual functional capacity to perform light work.

The Commissioner argues the ALJ's step two error was harmless because he nonetheless considered the same or equivalent symptoms at step four. ECF No. 19 at 2–3. The Court rejects this argument because the ALJ erred at step four as well as step two.

Even if the ALJ's error was confined to step two, the Court would reject the Commissioner's harmlessness argument because, as the Ninth Circuit recently explained, fibromyalgia's unique symptoms and diagnostic methods have significant impacts on residual functional capacity, and the ALJ must interpret the record in light of them. *See Revels*, 874 F.3d at 662. Additionally, careful review of the ALJ's decision reveals that his rejection of Dr. Angell's opinion on residual functional capacity was intertwined with, rather than independent of, his rejection of Dr. Angell's fibromyalgia diagnosis. AR 22–30.

Thus, the Court cannot conclude the ALJ's step two error was "inconsequential to the ultimate nondisability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). On the contrary, the Court must treat the

error as harmful because a reasonable ALJ, after fully crediting Dr. Angell's opinion, would be required to make a disability determination. *See id.*

**C.    The Court remands for an award of benefits.**

The Court remands this case to the Commissioner for an immediate award of benefits to Plaintiff because the record has been fully developed and further administrative proceedings would serve no useful purpose; the ALJ failed to provide legally sufficient reasons for rejecting Dr. Angell's opinion, which, if credited as true, would require the ALJ to find Plaintiff disabled on remand; and the record as a whole leaves no serious doubt that Plaintiff is actually disabled. *See Revels*, 874 F.3d at 668 & n.8.

**D.    The Court does not reach the issue regarding missing information.**

Plaintiff repeatedly argues the record omits certain information favoring him. ECF No. 16 at 1–2; ECF No. 17 at 2; ECF No. 18 at 1–3; ECF No. 21 at 1–2; ECF No. 24 at 1–2; ECF No. 27 at 2. Plaintiff claims the Commissioner intentionally withheld this missing information and falsely certified to the Court that it provided a complete record. ECF No. 18 at 2. Because the current record sufficiently establishes Plaintiff's disability and functional limitations, the Court need not reach his contention. *See Revels*, 874 F.3d at 669 n.9.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is

**GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3.    The Court enters **JUDGMENT** in favor of Plaintiff **REVERSING** and **REMANDING** this matter to the Commissioner for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

4.    All pending motions are **DENIED AS MOOT**.

5.    All hearings and other deadlines are **STRICKEN**.

6.    The Clerk's Office is directed to **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to *pro se* Plaintiff and the Commissioner's counsel.

**DATED** this 27th day of December 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge